UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

J & J SPORTS PRODUCTION, INC.,

    Plaintiff,

v.

LEONILDO SOUSA,
dba THE RAW MARTINI BAR.

    Defendant.

No. 17-cv-10554-LTS

## **REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR ASSESSMENT OF DAMAGES AND ENTRY OF DEFAULT JUDGMENT (DKT. NO. 10)**

CABELL, U.S.M.J.

    J & J Sports Production, Inc. ("the plaintiff"), a closed circuit distributor of sports and entertainment programming, has brought suit against the defendant Leonildo Sousa, individually and as the owner of the Raw Martini Bar in Fall River, Massachusetts ("the establishment"), for unlawfully exhibiting one of the plaintiff's programs. Although the defendant was properly served with the complaint, he has failed to answer or file any responsive pleadings. The plaintiff now moves for default judgment pursuant to Fed. R. Civ. P. 55. (Dkt. No. 10). For the following reasons, I recommend that the motion for default judgment be granted and that the plaintiff be awarded damages in the amount of $5,036.15.

## I. RELEVANT BACKGROUND

The following facts are taken from the plaintiff's pleadings, including the complaint and supporting affidavits, and are assumed to be true in light of the defendant's default. *See e.g., In re The Home Rests., Inc.,* 285 F.3d 111, 114 (1st Cir. 2002) (a defaulting party is "taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability").

The plaintiff is a closed circuit distributor of sports and entertainment programs and had exclusive nationwide commercial distribution rights to a boxing match that was telecast on April 12, 2014, the "*Manny Pacquiao v. Timothy Bradly, II WBO Welterweight Championship Fight Program*" ("the program"). (Compl. ¶ 9). As a result of its exclusive distribution rights, the plaintiff had the option of sublicensing the program to various commercial ventures for a set sublicensing fee. (Id. at ¶ 10). A commercial venture with such a sublicense could then publicly display the program in its establishment. (Id.). In this case, the plaintiff charged a sublicensing fee of $2,200.00 for the program. (Dkt. No. 11).

According to a sworn affidavit submitted by the plaintiff's investigator, Leonara DaPonte ("DaPonte"), she went to the establishment on the evening of April 12, 2014. DaPonte did not pay a cover charge to enter the establishment. Upon arriving

inside, DaPonte observed two flat screen televisions, both of which displayed the program. DaPonte estimates the establishment can hold a maximum of approximately 50 people. Over the course of the evening she made three separate head-counts of the patrons in the establishment and counted twenty-one (21), twenty (20), and twenty (20) patrons, respectively. (DaPonte Affidavit, Dkt. No. 13).

The plaintiff filed a complaint against the defendant on March 31, 2017. (Dkt. No. 1). The defendant was properly served on April 14, 2017 (Dkt. No. 6), but failed to respond to the complaint or file a responsive pleading. The Clerk of Court entered a notice of default on July 6, 2017. (Dkt. No. 9). The plaintiff now moves for default judgment and for an assessment of damages. (Dkt. No. 10).

## II. LEGAL STANDARD

Fed. R. Civ. P. 55 prescribes a two-step process for obtaining default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Thereafter, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Once a default judgment is entered, "the trial judge . . . has considerable latitude in determining the *amount* of damages." *Jones v. Winnepesaukee Realty*, 990 F.2d 1, 4 (1st Cir. 1993) (emphasis in original).

## III. ANALYSIS

### A. Applicability of Sections 553 and 605

The plaintiff contends that it is entitled to recover statutory and enhanced damages under the Cable Communications Policy Act, 47 U.S.C. § 553, and the Communications Act, 47 U.S.C. § 605. Specifically, the plaintiff seeks $10,000 in statutory damages under sections 553 and 605, $50,000 in enhanced damages for each willful violation under section 553, and $100,000 in enhanced damages for each willful violation under section 605. The plaintiff's requests require that the court first determine whether section 553 or section 605 applies to the facts of this case. While the statutes are similar in nature and purpose, "[o]ne cannot violate both with a single act of interception." *Joe Hand Promotions, Inc. v. Rajan*, No. 10-40029-TSH, 2011 WL 3295424, at *2 (D. Mass. July 28, 2011).

Section 553 provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). As the plaintiff's investigator observed two flat screen televisions in the establishment displaying the program, there would appear to be no dispute that the defendant's conduct falls within the purview of section 553.

Whether section 605 applies here, however, is not as clear. Section 605 provides that "[n]o person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a). "Section 605 thus prohibits the unauthorized interception or reception of *radio* communications." *Joe Hand Promotions, Inc. v. Patton*, No. 10-40242-FDS, 2011 WL 6002475, at *2 (D. Mass. Nov. 29, 2011) (emphasis in original). The First Circuit has held that based on the plain language of the statute and its regulatory framework, section 605 does not apply to communications transmitted over wire or cable. *See Charter Communications Entertainment I, DST v. Burdulis*, 460 F.3d 168, 173 (1st Cir. 2006)("[t]he change in form of transmission of the communication, from an airborne signal to a signal traveling over a cable wire, changes the applicability of [section 605]; when the communication is stolen as it is being transmitted over a cable wire, § 553, not § 605, applies"); *see also Patton*, 2011 WL 6002475 at *2 (holding that section 605 does not apply where the defendant obtained access to an "Ultimate Fighting Championship" program and displayed the program on a large screen television in the bar it owned); *J & J Sports Productions, Inc. v. Ivahy, Inc.*, No. 10-40109-FDS, 2011 WL 3295431, at *2 (D. Mass. July 29, 2011)(holding that section 605

5

does not apply where the defendants were intercepting a pay-per-view soccer match).

The plaintiff has moreover failed to allege anywhere that the defendant actually intercepted a radio communication or, for that matter, any facts that would allow one to infer that the defendant intercepted a radio communication. Having no evidence to the contrary, this court will assume, as other courts have also assumed on similar allegations, that section 605 does not apply here. *See Rajan*, 2011 WL 3295424 at *2 ("Plaintiff's Complaint fails to specify the type of interception alleged, whether 'over a cable wire' or the interception of radio signals. In the absence of evidence to the contrary, the Court applies the analysis used for cable theft over a cable system [under section 553]."); *see also G&G Closed Circuit Events LLC v. Duarte*, No. 15-40003-TSH, 2016 WL 1170969, at *3 (D. Mass. Mar. 25, 2016) (assuming that defendants violated section 553 by intercepting a cable program over a cable network where the plaintiff failed to specify the type of interception in its complaint).

### B. <u>Assessment of Damages Under Section 553</u>

*i. Statutory damages*

Section 553 provides that:

> "[d]amages awarded by any court under this section shall be computed in accordance with either of the following clauses: (i) the aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that

6

> are attributable to the violation which are not taken into account in computing actual damages . . .; or (ii) the party aggrieved may recover an award of statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just."

47 U.S.C. § 553(3)(A). Here, the plaintiff requests statutory damages in the full amount of $10,000. However, where the facts as alleged only establish a single violation of section 553, the court recommends that the plaintiff recover $2,200 in statutory damages. In reaching this figure, the court is guided in part by the fact that $2,200 is the amount the defendant should and would have paid to the plaintiff to obtain a sublicense to show the program in the establishment. Of course, this is not to say that an aggrieved plaintiff may never recover in statutory damages more than its licensing fee. But, to allow an award at the maximum statutory amount on these facts, where no cover was charged, there were relatively few patrons, and there is no evidence as to whether patrons were drawn to the establishment to watch the program, would undermine Congress's decision to set a range for statutory damages. *See e.g., J & J Sports Productions, Inc. v. Jose Bou and Salsarengue, Inc.*, No. 15-30004-MGM, 2015 WL 8082433, at *2 (D. Mass. Dec. 7, 2015) (awarding statutory damages equal to the sublicensing fee).

*ii. Enhanced damages*

Section 553 further provides that:

> [i]n any case in which the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory under subparagraph (A), by an amount of not more than $50,000.

47 U.S.C. § 553(c)(3)(B). The plaintiff seeks enhanced damages under section 553 on the ground that the defendant's conduct in intercepting and displaying the program was willful and done for purposes of his own commercial advancement. (Dkt. No. 11). The purpose of an enhanced damage award is to "establish deterrence . . . for certain willful conduct." *Charter*, 460 F.3d at 183.

The plaintiff here states that its program could not be intercepted inadvertently or innocently, suggesting by inference that the defendant must have engaged in willful conduct to obtain the program for display. To that extent, the plaintiff's pleadings are somewhat bare and fail to allege any facts addressing what conduct the defendant must have engaged in in order to intercept the signal. *See Patton*, 2011 WL 6002475 at *4 n.5 ("Normally, for an interception to be found willful, there must be some factual specificity as to how defendants intercepted the signal."); *Comcast of S. New England, Inc. v. Kacavas*, No. 07CV10780-NG, 2007 WL 4556685, at *3 (D. Mass. Dec. 18. 2007)(finding willful conduct where the plaintiff alleged facts that the defendant knew "that he

8

could not receive premium cable content, voluntarily and intentionally undertook to modify his cable box so that they could unscramble content that he was clearly blocked from receiving"). Nevertheless, for the limited purposes of assessing damages in the context of a motion for default judgment, the court will credit the plaintiff's assertion that the program could not be intercepted or received without authorization, and thus finds that the defendant's conduct in obtaining the signal necessarily was intentional and thus "willful" under the statute.

Additionally, the court finds that the interception was "for purposes of commercial advantage or private financial gain." The program was shown in a restaurant and bar area, presumably for the purpose of attracting patrons in the establishment to purchase food and beverages. *See Patton*, 2011 WL 6002475, at *4 (holding that the interception was for commercial advantage or private financial gain where the defendant intercepted the program as an "inducement for patrons to purchase food and beverages").

Accordingly, the court finds that the defendant's conduct was "willful" and made "for the purposes of commercial advantage or private financial gain." The court therefore recommends an award of enhanced damages in the amount of $1,000.[1]

---

[1] While the court agrees that there is a need to deter other similarly situated entities from engaging in similar conduct, a number of factors militate here in favor of awarding enhanced damages at the lower end of the spectrum. Among other things, the defendant apparently did not advertise for the program and did not charge a cover fee to enter the establishment. Further, the

*iii. Attorney's Fees and Costs*

Section 553 also authorizes the court in its discretion to "direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 553(c)(2)(C). "The First Circuit follows the lodestar approach, which calculates reasonable attorneys' fees as the number of hours reasonably expended multiplied by a reasonable hourly rate." *Charter*, 367 F. Supp. 2d at 34 (*quoting Furtado v. Bishop*, 635 F.2d 915, 920(1st Cir. 1980)).

The plaintiff has established that it has incurred $1,375 in attorney's fees and $461.15 in costs. Based on the affidavit of the plaintiff's counsel, Patricia Szumowski, the number of hours expended (5) is reasonable for this matter and the rate charged per hour ($250) is comparable to that charged by attorneys with the same level of experience in this geographic region. (See

---

establishment is located in a relatively small city and did not attract a large number of patrons on the night in question. Further still, there is no evidence or allegation that the defendant had engaged in similar conduct in the past. In this light, the defendant's violation, while unquestionably unlawful and worthy of punishment, is not so serious or egregious as to merit the greater enhanced damages the plaintiff seeks. *See e.g., Joe Hand Promotions, Inc. v. Salinetti*, 148 F. Supp. 2d 119, 122 (D. Mass. 2001) (measuring additional damages by the seriousness of the violation). Other courts have approached the issue similarly. *See e.g., Joe Hand Promotions, Inc. v. Lenihan*, No. 11-10504-TSH, 2012 WL 3637833, at *3 (awarding $1,000 in enhanced damages where the defendants were not repeat offenders, did not charge a cover fee or advertise the event, and there were only eighteen patrons in the establishment); *Patton*, 2011 WL 6002475, at *4 (awarding $750 in enhanced damages where the defendants did not charge a cover fee and the number of patrons varied from thirteen to fifteen); *Charter Communications Entertainment I, LLC v. Burdulis*, 367 F. Supp. 2d 16, 33 (D. Mass. 2005)(adopting "the position that a $1,000 enhanced damages penalty is the presumptively correct amount for single violations by the individual subscribers").

Affidavit of Patricia A. Szumowski, Dkt. No. 15). *See Duarte*, 2016 WL 1170969, at *4 (finding that 5 hours expended at a rate per hour of $250 was reasonable in a section 553 type case). Therefore, it is recommended that the plaintiff be awarded $1,375 in attorney's fees and $461.15 in costs.

### C. State Law Claims

The complaint also asserts a statutory claim for violation of the Massachusetts Consumer Protection Act, M.G.L. c. 93A, and a common law claim for conversion. Presumably, the plaintiff does not seek damages in connection with these claims where its memorandum does not reference them. Regardless, and to be clear, "this district ha[s] declined to award damages on state law claims beyond the damages awarded under [section] 553 . . . because [t]he injury sustained under the federal statutes and for the state law . . . claim is the same and an additional award would be duplicative." *J & J Sports Productions, Inc. v. Pessolano*, No. 15-cv-30081-MGM, 2016 WL 695677, at *3 (D. Mass. Jan. 20, 2016). No damages therefore should be awarded with respect to the plaintiff's state law claims.

### IV. CONCLUSION

For the foregoing reasons, the court recommends that the plaintiff's Motion for Assessment of Damages and Entry of Default Judgment (Dkt. No. 10) be GRANTED, and that the plaintiff be awarded total damages in the amount of $5,036.15. This award

includes statutory damages in the amount of $2,200, enhanced damages in the amount of $1,000, attorney's fees in the amount of $1,375, and costs in the amount of $461.15.[2]

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED: December 11, 2017

---

[2] The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. *See Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983).